# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| ROBERT L. ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 1:05-CV-18-TS |
| | ) | |
| JONATHON NOLL, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

This matter is before the Court on the Defendant's Motion for Summary Judgment, filed on December 1, 2005. The Plaintiff, Robert L. Allen, filed his Complaint on January 19, 2005, alleging that the Defendant, Jonathon Noll, a Fort Wayne Police Officer, used excessive force in arresting the Plaintiff on August 25, 2004. The Defendant's argues in his motion for summary judgment that he is entitled to qualified immunity, and that the Defendant is precluded from relitigating facts he admitted when he pled guilty to crimes he committed on August 25, 2004. The Plaintiff responded on January 30, 2006, and the Defendant replied on February 14, 2006.

Upon consideration of the Defendant's collateral estoppel argument, the Court ordered oral argument on the issue and on the doctrines of *Heck v. Humphrey* and judicial estoppel. The Plaintiff filed a supplemental brief on May 10, 2006, and oral argument was held on May 11, 2006. For the reasons stated below, the Defendant's motion is granted.

**A.**   **Summary Judgment Standard**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In other words, the record must reveal that no reasonable jury could find for the nonmoving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). After adequate time for discovery, summary judgment must be given against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party may, if it chooses, support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982); *Faulkner v. Baldwin Piano & Organ*

*Co.*, 561 F.2d 677, 683 (7th Cir. 1977).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Federal Rule of Civil Procedure 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248–50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992). Only material facts will preclude summary judgment; irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Anderson*, 477 U.S. at 248–49. If there is no genuine issue of material fact, the only question is whether the moving party is entitled to judgment as a matter of law. *Miranda v. Wisc. Power & Light Co.*, 91 F.3d 1011, 1014 (7th Cir. 1996).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50;

3

*Doe*, 42 F.3d at 443.

**B.      Factual Allegations**

On August 25, 2004, at approximately 10:10 p.m., the Fort Wayne Police Department set up an undercover drug buy at an apartment on Taylor Street in Fort Wayne, Indiana. (Jonathan Noll's Affidavit for Probable Cause, DE 37.) A confidential informant (CI) drove to the location with Detective Craig Wise, acting undercover, to purchase crack cocaine from a person named James Chapman. The Police Department had other officers in the area for security, including the Defendant, Officer Noll. After arriving, the CI exited the vehicle and entered the apartment and bought drugs from Chapman. Wise stayed in the vehicle.

The Plaintiff soon arrived at the location. Plaintiff had drank a couple pitchers of beer while shooting pool. (Robert Allen's Dep. 6, DE 44.) He got a ride to a filling station, and apparently walked to the apartment on Taylor Street, though the record is not clear how he got there. (Robert Allen's Dep. 6, DE 44.) His purpose in going to the apartment was to visit Chapman. (Robert Allen's Dep. 6, DE 44.) What the Plaintiff did when he got to the apartment is not clear because the Plaintiff's and Defendant's stories substantially differ and the Plaintiff's deposition does not give a clear timeline of his version of the events.

According to the Defendant, who could hear the events through a listening device, the Plaintiff approached Wise's car and aggressively ordered him to give the Plaintiff some money. Wise told the Plaintiff he had given his last $40 to the CI to buy drugs. The Plaintiff then opened the car door and threatened Wise, and Wise again explained that he gave his money to the CI. At this point, Wise feared for his safety and that of the CI. The CI exited the apartment and the Plaintiff

approached the CI, demanding the drugs, and began pushing the CI. Officers, including the Defendant, then arrived to rescue Wise and the CI.

The Plaintiff tells a much different story. The Plaintiff states that he was in the apartment when the CI bought drugs from Chapman. He states that he left the apartment with the CI and after jumping off of the side porch, a police car barreled over the curb. He admits to having talked to Wise when he was sitting in the car, though it is not clear from the Plaintiff's deposition testimony whether this was before or after he entered the apartment. The Plaintiff denies that he demanded money, opened the car door, or threatened anybody with physical harm. (Robert Allen's Dep. 19, DE 44.) Instead, he states he warned Wise that the CI owed money to "these guys"—apparently Chapman and some other individuals who were present—and that "you guys need to rectify that, take care of that, man, because they'll hurt her, you know, they're not, these youngsters are not playing about their money." (Robert Allen's Dep. 19, DE 44.) He also told Wise that "the young guys would body slam [the CI], they would beat her up about their money." (Robert Allen's Dep. 23–24, DE 44.) The Plaintiff states he then walked away.

When the Defendant arrived, he ordered the Plaintiff to stop and get on the ground. The parties disagree as to how the Plaintiff reacted. The Defendant states that the Plaintiff ignored the order and turned away. Two other officers ordered him to stop and get on the ground. The Plaintiff walked quickly toward Wise with his hands in his shirt, and so the Defendant ran behind the Plaintiff, and ordered him to stop. The Defendant feared the Plaintiff was going to harm the undercover officer or the CI because the Plaintiff did not stop. The Defendant struck the Plaintiff's neck with his right forearm, and then pushed him to the ground, where he was then handcuffed.

The Plaintiff states that after being ordered to stop and get down, he "put [his] hands up,

5

turned around and proceeded to kneel down." (Robert Allen's Dep. 26, DE 42.) He was then struck from behind. He lost consciousness from the blow and fell down face first. (Robert Allen's Dep. 34, DE 42.) Because he was facing away from the officer who struck him, he did not see what he was struck with, but he believes it was a gun or a flashlight, because the officer who ordered him to stop was carrying a gun and a flashlight and he was hit with something heavy. (Robert Allen's Dep. 33, DE 44.) He states blood trickled down his face and there was "quite a bit of blood" on the ground, apparently from abrasions to the Plaintiff's head. (Robert Allen's Dep. 10, DE 44; Jonathan Noll's Answers to Interrogatories 2, DE 37.) No evidence of any other injury has been submitted.

The Plaintiff was taken to a hospital for treatment. He remembers little from the hospital, and admits to being uncooperative as a result of his intoxication. (Robert Allen's Dep. 10, DE 44.) There is no evidence that the Plaintiff received any treatment. The Defendant states he saw no swelling or marks on the Plaintiff's neck where he was struck. (Jonathan Noll's Answers to Interrogatories 2, DE 37.)

Later, he was brought to the police station where he was charged with two felony counts of armed robbery, one misdemeanor charge of resisting arrest, and a habitual offender charge. The informations for the attempted robbery charges state the Plaintiff attempted to take money or personal property from Wise and cocaine from the CI by "approaching and threatening . . . Wise with bodily harm if he did not give said defendant United States currency or anything else of value," (Information for Attempt Robbery, Count I, DE 37), and by "pushing [the CI] and demanding that [the CI] give him the stuff," (Information for Attempt Robbery, Count II, DE 37). The resisting arrest information states that the Plaintiff "did knowingly or intentionally flee from J. Noll, a law enforcement officer empowered by the Fort Wayne Police Department, after said J. Noll had, by

6

visible or audible means, identified himself and ordered Robert Lee Allen to stop . . . ." (Information for Resisting Law Enforcement, Count III, DE 37.) He pled guilty to those charges, as well as a charge for being a habitual offender under Indiana law, and was sentenced to twelve years in jail. (Judgment of Conviction, Cause No. 02D04-408-FC-121, DE 37.) The Plaintiff has made no effort to reconcile his version of the facts to the facts stated in the informations to which he pled guilty.

### C.    Excessive Force and Qualified Immunity

The Plaintiff claims the Defendant violated his Fourth and Eighth amendment rights by using excessive force to detain him. (Pl. Compl. 4, DE 1.) The Defendant argues that his use of force was reasonable in light of the facts and circumstances confronting him, that he is entitled to qualified immunity, and that collateral estoppel bars the Plaintiff from alleging facts contrary to those stated in the informations to which he pled guilty.

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Id.* The Plaintiff does not allege any violation after his conviction and therefore, to the extent his Complaint states a violation of the Eighth Amendment, that claim is dismissed.

**(1)    *Excessive Force Analysis***

"[T]he Fourth Amendment prohibits the use of excessive force during the execution of a seizure." *Jacobs v. City of Chi.*, 215 F.3d 758, 773 (7th Cir. 2000). The reasonableness of force is a legal issue, as juries do not determine what limits the Constitution places on official conduct. *Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003). Judging from the perspective of a reasonable officer present on the scene, if an officer's actions were "'objectively reasonable' in light of the facts and circumstances confronting them," the actions do not constitute excessive force. *Graham v. Connor*, 490 U.S. 386, 397 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). A court must look to the following factors when determining whether the amount of force used is reasonable: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003). Also, injury is not required to set out a claim for excessive force, but the lack of injury tends to suggest that the force was not excessive. *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 471 n.3 (7th Cir. 1997). It is clearly established that "police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever." *Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996). "Of course, the 'calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Fox v.*

*Pttinger*, 2005 WL 1712216, *8 (N.D. Ind. 2005) (quoting *Graham v. O'Connor*, 490 U.S. 386, 396–97 (1989)).

The facts as alleged by the Plaintiff make for a close case. Though striking a Plaintiff who has apparently surrendered may be unreasonable in most cases, other considerations convince the Court that the Defendant's conduct was not unreasonable. The situation was tense and volatile. An undercover drug buy involving a CI was in progress when the Plaintiff arrived. The officers did not know what the Plaintiff was doing there, and he began talking to the undercover cop about how the drug dealers targeted by the police were serious about their money and would hurt the CI should she not pay them. "The young guys would body slam [the CI], they would beat her up about their money." (Robert Allen's Dep. 23–24, DE 44.) The Plaintiff claims he was present in the apartment when the CI purchased drugs, and that he left the house with the CI. (Robert Allen's Dep. 9, DE 44.) He talked to the CI as she left the building. This would suggest to the police that the Plaintiff was not some kind-hearted stranger warning a drug buyer about the dangers of dealing with these drug dealers, but that he was associated with the targeted drug dealers and his comments were veiled threats. The Defendant, having heard the conversation over his listening device and having seen undercover detective Wise give the distress signal, was reasonable in thinking he had only moments to step in to protect the CI and detective Wise. The Plaintiff's presence and comments about those guys wanting their money and their proclivity for violence could easily have been interpreted by the police as threats.

After arriving on the scene and ordering the Plaintiff to get down, the Defendant hit the Plaintiff with a hard object even though the Plaintiff had turned around, raised his hands, and began kneeling in response to the order. Guns and drugs often go together, and the Defendant was

reasonable in fearing that Wise's and the CI's lives were at risk. All of the evidence suggests that protecting their lives was the Defendant's chief concern. The blow was not wholly gratuitous, as the intent behind the blow was to take down the Plaintiff and gain control of the situation. Though the blow was powerful enough to knock the Plaintiff unconscious, the force used did not cause any serious or lasting injury.

The Defendant's split second decision may not have been the most reasonable course of action in hindsight, but in those tense moments, not knowing what they were facing, and with the safety of those present requiring the detention of the Plaintiff, the Defendant's acts cannot be said to be unreasonable. Under the totality of the circumstances, judging from the perspective of a reasonable police officer, and taking the Plaintiff's facts as true, the Defendant's blow to the Plaintiff was reasonable.

**(2)** *Qualified Immunity Analysis*

Even if the Defendant's actions were not reasonable under the Fourth Amendment, the Defendant would be entitled to qualified immunity, as the Plaintiff has not shown that a reasonable officer would have been aware the force used was excessive.

Government officials, including police officers, are protected by the doctrine of qualified immunity for actions that could have been reasonably believed to be lawful in light of clearly established law. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity concerns whether a reasonable police officer could have believed his conduct was constitutional, in light of clearly established law and the information the officer possessed at the time of the alleged violation. *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 472 (7th Cir. 1997) (citing *Frazell v.*

10

*Flanigan*, 102 F.3d 877, 886 (7th Cir. 1996)). The reasonableness of an officer's belief that his actions are legal depends on how clearly established the law is governing the officer's particular action. An officer's belief in the lawfulness of his conduct is reasonable unless pre-existing law makes the unlawfulness of the conduct apparent. *Creighton*, at 639–40. Even if an officer acts unlawfully, qualified immunity applies if the officer's mistake was reasonable. *Saucier v. Katz*, 533 U.S. 194, 205 (2001).

The Supreme Court has outlined a two-step process to determine whether qualified immunity applies. *Id.* at 200. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* at 201. If the facts show a violation of a plaintiff's constitutional rights, the court must then ask whether the specific right violated was so clearly established at the time of the conduct that the officer's mistake was unreasonable. *Id.* at 201–02. It is the plaintiff's burden to show a defendant's conduct violated clearly established law, and he may do so by offering closely analogous cases or evidence that the defendant's conduct was so obviously a violation of the Constitution that a reasonable officer would have known this without court guidance. *Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir. 1993). If relying on caselaw, it is not necessary for a plaintiff to find a prior case with nearly identical facts; the plaintiff must produce caselaw showing the state of the law at the time of the officer's conduct was such that they had fair warning their conduct violated the constitution. *See Green v. Butler*, 420 F.3d 689, 701 (7th Cir. 2005).

The Court has already found the Defendant's actions to be reasonable, but even if they were not, the Plaintiff has not met his burden to show that a reasonable officer would have known the Defendant's conduct was unreasonable. The relevant question is whether a reasonable officer would

know that it is excessive force to strike a suspect who appears to have begun to comply with the officer's order to stop by raising his hands, when the officer reasonably believes the suspect presents an immediate threat to the life of those at the scene and must quickly act to detain the suspect and gain control of the situation. The Plaintiff offers no similar case, and instead argues the Defendant's conduct was so clearly in violation of the Constitution that a reasonable officer should have been aware of the unconstitutionality of his actions. The factors listed above weigh in support of the reasonableness of the Defendant's conduct, so if the Defendant's conduct crossed the line and was excessive, it was not so plainly excessive that the Defendant should have been on notice that the conduct was unreasonable.

The one case cited by the Plaintiff in support of his argument is easily distinguished. *Tennen v. Shier*, 1995 U.S. Dist. LEXIS 9297 (N.D. Ill. June 30, 1995), stated that "when there is no resistance to arrest, it should be clear to any officer that pushing, yanking, twisting, and striking the arrestee is never necessary." *Id.* at *22. The circumstances of that case involved an officer directing a driver to move his car at Midway Airport in Chicago. The person the driver was waiting for arrived and questioned the officer's orders. The officer arrested the second person and yanked him toward a holding area, and struck him once after he lost his balance. In finding that the plaintiff had stated a claim for excessive force, the *Tennen* court found it significant that "the plaintiff's alleged misconduct was neither violent nor serious" and that "this is not a case where the defendant was forced to make a split-second judgment under tense and rapidly evolving grave danger."*Id.* at *13. The case provides little in determining whether the officer's conduct was reasonable in this case, and would offer no insight to a reasonable officer in deciding whether the force used to detain the Plaintiff was reasonable here.

**D.	Plaintiff's Guilty Plea**

Though the Court finds the Defendant's conduct reasonable under the facts alleged by the Plaintiff, another ground for granting the Defendant's motion for summary judgment is that the Plaintiff is judicially estopped from denying the facts he admitted when he pled guilty to the charges arising out of the incident at issue.[1] Taking as true the facts necessarily admitted by the Plaintiff when he pled guilty to those charges, the Defendant's conduct is further justified.

**(2)	*Judicial Estoppel***

"The doctrine of judicial estoppel is intended to protect the integrity of the judicial process." *United States v. Christian*, 342 F.3d 744, 747 (7th Cir. 2003). Judicial estoppel applies when: 1) a party takes a position clearly inconsistent with a position previously taken by the party in an earlier litigation; 2) the facts in issue are the same in both cases; 3) the parties to be estopped convinced the first court to adopt its position; and 4) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id*.

In pleading guilty, the Plaintiff necessarily took the position that the facts stated in the

---

[1]	Issue preclusion and the doctrine of *Heck v. Humphrey*, may also bar the Plaintiff from denying the fact of his resistence to the Defendant's attempt to detain him. However, difficult and complicated issues exist as to whether Indiana would hold that any issues are actually litigated in a plea hearing, *State Farm Fire and Casualty Co. v. Fullerton*, 118 F.3d 374, 378–81 (5th Cir.1997) (surveying state cases on the issue and concluding "nothing approaching a consensus has emerged"), and whether the Plaintiff's claim is *Heck*-barred because the Plaintiff was convicted of resisting arrest and has brought an excessive force claim stating the force was unreasonable because the Plaintiff did not resist arrest and complied with the Defendant's orders, *compare Toombs v. Martin*, 2006 WL 571860, *5 (N.D. Ind. March 8, 2006) (holding that a successful excessive force claim would necessarily invalidate a claimant's resisting arrest conviction, and that the excessive force claim is therefore *Heck*-barred, where an officer's conduct could be unreasonable under the claimant's facts only if the claimant did not resist arrest) *with VanGilder v. Baker*, 435 F.3d 689 (7th Cir. 2006) (holding that *Heck* does not bar an excessive force claim where the claimant argues that the excessive force alleged was an unreasonable response to the claimant's resistence). Consideration of these doctrines is unnecessary due to the Court's finding that the Defendant's use of force was reasonable under the Plaintiff's version of what happened and that, in any event, judicial estoppel prevents the Plaintiff from denying facts admitted in pleading guilty.

13

informations were true, because, under Indiana law "[a] guilty plea is an admission of guilt; it admits the incriminating facts alleged."[2] *Patton v. State*, 517 N.E.2d 374, 375 (Ind. 1987). The facts stated in the informations to which the Plaintiff pled guilty are at issue in this case. If the Plaintiff attempted to rob Detective Wise and the CI, that must be weighed in deciding whether the totality of the circumstances made the Defendant's use of force reasonable. Also, the extent of the Plaintiff's resistance is at issue because if the Plaintiff did resist, more force would be reasonable to detain the Plaintiff than if he complied with all police orders. Fleeing from the police after being ordered to stop, as the information states he did, would justify greater wariness on the part of the police when restraining the Plaintiff. The Plaintiff convinced the court to adopt his position that he was guilty of the crimes stated in the informations. To allow the Plaintiff to present evidence against the Defendant that so clearly contradicts the facts admitted when he pled guilty, disrespects the judicial process and makes it appear to be a game. Such a lack of seriousness is unfair to a defendant that must take seriously the claims brought against him. Also, the Plaintiff has already benefitted by pleading guilty, and now seeks to benefit again by telling a different story in this litigation. The Defendant may not change his story to fit whatever litigation he is engaged in. The Defendant is estopped from denying the facts he admitted when he pled guilty.

**(3)** *Effect of Judicial Estoppel*

Because the Plaintiff is estopped from denying the facts in the informations to which he pled guilty, the totality of the circumstances weigh even more strongly in favor of the reasonableness of

---

[2] The Plaintiff may have admitted some of the facts stated in the probable cause affidavits at his plea hearing, but because the Defendant has not submitted transcripts from the hearing, the Plaintiff's admissions are limited to the facts stated in the informations to which he pled guilty.

the Defendant's conduct. As stated by the informations and admitted by the Plaintiff, the Plaintiff committed attempted robbery by pushing the CI and demanding she give him "the stuff," (Information for Attempt Robbery, Count II, DE 37), and by approaching and threatening Wise with bodily harm if he did not give the Plaintiff money or anything else of value. Taking these facts as true, the Defendant had even greater reason to fear for the safety of Wise and the CI than he would have under the Plaintiff's version of what happened. The Plaintiff did not make vague statements about the CI and Wise being attacked by others, he made explicit demands for property and pushed the CI. The Defendant's belief in the necessity of immediately detaining the Plaintiff for everybody's safety was reasonable and justified quick action to gain immediate control of the situation.

The Plaintiff is also estopped from denying that he fled from the Defendant. The Plaintiff argues that even if it must be accepted as true that the Plaintiff fled in response to the Defendant's order to stop, he is entitled to the inference that after fleeing, he put his hands up and complied with the Defendant's orders to stop. The Court does not see how a reasonable jury could infer this from the evidence, because the Plaintiff has no evidence to contradict the Defendant's evidence that he struck the Plaintiff while he was walking away from him. There is no evidence that the Plaintiff stopped fleeing. Even if the inference was reasonable, the fact that the Plaintiff fled after being ordered to stop, added to the totality of the circumstances, would justify even greater wariness on the part of the Defendant when dealing with the Plaintiff, further justifying an immediate and forceful takedown of a dangerous suspect, even one that had begun to comply.

Taking as true the facts stated in the informations to which the Plaintiff pled guilty, the totality of the circumstances shows that the Defendant's force was reasonable and that qualified

immunity applies to bar the Plaintiff's claims.

## ORDER

For the reasons stated above, the Defendant's motion for summary judgment is GRANTED, and the Plaintiff's claims are DISMISSED.

SO ORDERED on June 21, 2006.

_/s/ Theresa L. Springmann_  
THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT